UNITED STATES MINERAL WOOL CO. v. MANVILLE COVERING CO.

(Circuit Court of Appeals, Seventh Circuit. October 6, 1903.)

No. 934.

1. PATENTS—PRIOR USE—PROCESS FOR MANUFACTURING MINERAL WOOL.

The Rockwell patent, No. 447,360, for processes of manufacturing mineral wool by remelting hardened slag from a smelting furnace with lime, or with lime and silica, is void for anticipation by the prior public use of the process by others.

2. SAME—INFRINGEMENT.

The Rockwell patent, No. 452,733, for a process of manufacturing mineral wool by remelting hardened slag from a smelting furnace with silica, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

See 101 Fed. 145.

Albert G. Welsh and E. W. Frost, for appellant.

Curtis T. Benedict, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. Appellant failed in its suit to hold appellee for infringement of letters patent 447,360, March 3, 1891, and 452,733, May 19, 1891, both issued on applications of Charles H. Rockwell, assignor, for new and improved processes in the manufacture of mineral wool.

Mineral wool, as a product, had long been known. It had been made either by taking molten slag from a blast furnace in a metal car to the blowing device, where the car was tapped and a jet of steam or air converted the molten slag into mineral wool, or by fusing lime and silica-bearing rocks in a cupola, and blowing the stream as it came from the tap. In the specification of the first patent, Rockwell stated that hardened slag could not be remelted and made into mineral wool without the addition of other material, and that he had found by experiment that lime (an alkali) or silica (an acid) or both were suitable.

"Whether lime or silica or both shall be used depends upon the nature of the slag. This can be determined, for one or two inexpensive trials will decide which, and whether both, of the ingredients named should be used. The proportion of each ingredient to be used will also depend upon the nature of the slag, to be determined in like manner by trial. In all cases the proportion of lime or silica or both will be small. In the use of ordinary slag, I have found the following proportions to produce good results, viz.: Slag, eighty per cent.; limestone, fifteen per cent.; quartz pebbles (silica), five per cent. In many cases the slag will be found to be so silicious as to render the addition of quartz pebbles or silica unnecessary, but I do not confine myself to the proportion named."

In the specification of the second patent, Rockwell said:

"In practice, I have found that ninety-five per cent. of slag and five per cent. of silica or silica-bearing stone produces a good result, but I do not intend to confine myself to the exact proportions mentioned. The amount of silica to be used can be easily ascertained by a few inexpensive trials."

The claims of the first patent are these:

"(1) The process of manufacturing mineral wool, consisting of remelting hardened slag or scoria from a smelting furnace with lime and silica, or lime and silica-bearing stone, mixed in proper proportions, and blowing the same into mineral wool, substantially as described. (2) The process of manufacturing mineral wool, consisting of remelting hardened slag or scoria from a smelting furnace with lime, or lime-bearing stone, mixed in proper proportions, and converting the same into mineral wool, substantially as described."

Of the second patent:

"In the manufacture of mineral wool, the process consisting in melting in a cupola hardened slag or scoria with silica, or silica-bearing stone, mixed in proper proportions, and converting the same into mineral wool, substantially as described."

It was shown that appellee made mineral wool from a fusion of hardened slag and dolomite (a stone containing lime and magnesia in about the ratio of 5 to 4), and occasionally a very little feldspar.

If there was any infringement, it was not of the second patent, which claims the process of reducing slag with silica alone.

The Circuit Court held the first patent void for want of novelty, in view of the prior use of the process by others. The evidence satisfies us beyond any reasonable doubt, as it did the court below, of the existence of the following facts: In 1884 Pettigrew was the superintendent, and Gleason the chief engineer, of the Illinois Steel Company's plant at Joliet. They knew the article, mineral wool, and were using it as pipe covering in the plant. Instead of continuing to buy it in the market, they undertook to provide a supply from the refuse of the furnaces. They did not use the direct process of blowing the slag as it came molten from the furnaces, but endeavored to make mineral wool by remelting hardened slag in a cupola. They found that the product was too dark, brittle, and shotted. Pettigrew, Gleason, and others interested in the experiments, knew the use of limestone in fluxing ores. A Mr. Hay, now dead, suggested that the slag was deficient in lime. Thereupon they added a limestone (dolomite), and found that they could produce a good article of white and fibrous mineral wool by the process of remelting in a cupola hardened slag with lime, or lime-bearing stone, mixed in proper proportions; that the proportions depended upon the nature of the slag, and could be easily determined by testing the fusion from time to time by blowing. A Mr. Kelly, to whom some samples were sent, testifies that the wool was dark, coarse, and shotted. Pettigrew and Gleason say that the samples were white and fibrous. But it is not necessary to discredit Mr. Kelly's recollection of the product he saw, to find that at Joliet, in 1884, the process of remelting hardened slag with limestone in proper proportions was known. It may be that further experience in the use of the process and repeated tests of the fusion were necessary (as the patent itself indicates) to produce the best product. But there is no doubt that the process employed would do it. And there is no doubt that Pettigrew and Gleason, who were familiar with the mineral wool on the market, finally produced in 1884 about two tons of mineral wool which was suitable for use and was used in covering the pipes, and was sufficient to meet the needs of the plant at the time. In 1886, without further

experiment, and by the use of the same process, they made a further supply.

At Joliet they remelted hardened slag with limestone (claim 2 of the patent). It is not shown that they added silica or silica-bearing stone (claim 1). But when they remelted the slag, a composition of the silica of the ore and the limestone flux, and, finding it by test deficient in lime, put limestone in the cupola, it would not require invention, if they added too much limestone to a particular charge of slag, to offset the excess by adding a proper amount of silica-bearing stone.

If the patent is not void for indefiniteness (Cerealine Mfg. Co. v. Bates, 101 Fed. 280, 41 C. C. A. 341; Tyler v. Boston, 7 Wall. 327, 19 L. Ed. 93), we think the process was anticipated by the prior use at Joliet. What Pettigrew and Gleason did was not an abandoned experiment. They knew the product they wanted to get. They experimented with hardened slag alone unsuccessfully. They determined what should be added, and why, and thereupon they succeeded. The process they discovered in 1884 did not lapse into a lost art. In 1886 they used it in successful manufacture. Why the Illinois Steel Company did not have them continue is not clear, but they were not the masters. Nevertheless, whenever they have been called upon since 1884 to explain the process, they have done so. The use was not secret. The process was practiced by Pettigrew and Gleason, and those who assisted, and was open to the observation of the employés generally, and of all who passed through the plant. We think there was abundant publicity. Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821; Brush v. Condit, 132 U. S. 39, 10 Sup. Ct. 1, 33 L. Ed. 251; Forncrook v. Root, 127 U. S. 180, 8 Sup. Ct. 1247, 32 L. Ed. 97; Peters v. Active Mfg. Co., 129 U. S. 530, 9 Sup. Ct. 389, 32 L. Ed. 738.

The decree is affirmed.