## E. VAN NOORDEN CO. et al. v. CHENEY CO.

### No. 2948.

Circuit Court of Appeals, First Circuit.
Dec. 27, 1934.

Rehearing Denied Feb. 27, 1935.

George P. Dike, of Boston, Mass. (Cedric W. Porter, of Boston, Mass., on the brief), for appellants.

Charles F. Miller, Jr., of Washington, D. C. (Everett S. Emery and Emery, Booth, Varney & Townsend, all of Boston, Mass., and Emery, Booth, Varney & Holcombe, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a consolidated appeal from interlocutory decrees by the District Court of Massachusetts ordering permanent injunctions and an accounting in a bill in equity involving the validity and infringement of certain patents for metal flashings used in building construction.

It was stipulated that the plaintiff is the sole owner of certain letters patent covering what is termed "interlocking through wall flashings," No. 1,715,000, granted to Allan Cheney May 28, 1929, and No. 1,860,240, issued to Edmund H. Friedrich, granted May 24, 1932.

The type of flashing covered by the Cheney patent was designed to be used in walls of buildings between the courses of brick to prevent water seeping down through the walls and into the inside of the building, and also to prevent a movement of the masonry in any direction.

This flashing is constructed of some thin metal, such as copper, pressed into the form of a series of alternating transverse ridges, or ribs, and grooves, and respectively of approximately three-eighths of an inch in height and depth, the side walls of each rib being inclined inward at an acute angle so as to present in a cross section a dovetail effect, the side walls of each alternate rib and groove tapering longitudinally in opposite directions; or it may be constructed so that the sides of each alternate groove on one side of the flashing will taper longitudinally in opposite directions, while the sides of each alternate rib remain parallel; and on the other side of the flashing the sides of each rib will taper longitudinally in opposite directions, while the sides of each alternate groove remain parallel.

A perspective of the different faces of the Cheney flashing is represented by the following sketches:

and the end or cross section is represented by the following, showing the dovetail effect:

It is designed to be placed in walls between a course of brick, so that the alternate ribs and grooves run transversely of, or across, the wall, and are bedded in mortar; and it is claimed that it will gradually carry off through the outside wall any moisture collected from above this particular course of masonry, and it is further claimed that it not only binds the masonry from any vertical and lateral, but also from any longitudinal movement.

The Friedrich patent covers a metal flashing designed for use under copings, either at the edge of a roof or on top of parapet walls, and for waterproofing the joint where the wall joins the roof. It is not designed or adapted for drainage through the outside wall of any moisture collecting between the several courses of a brick wall, because of the single uninterrupted rib running lengthwise of the wall. As a "through wall flashing" it is designed for use only where each side of the wall is exposed to the weather, as in case of a parapet wall, and any collection of moisture within can be taken care of on both sides. The particular advance claimed for it over the prior art is its interlocking effect and the flexibility of its edges. It consists, according to the drawings and specifications, of a sheet of thin metal, such as copper, which is pressed so as to form a single continuous longitudinal flat rib several inches wide and extending the full length of the metal sheet with edges of the rib inclined inward at an acute angle, the sheet being of sufficient width and flexibility so that workmen in installing it can bend the edges to conform to the edges of the wall, or in joining it to the roof, and leave the rib extending longitudinally of the wall and approximately in the center thereof. Neither the drawings, the specifications, nor the claims contemplate any depressions across or interruption of the continuity of the rib, and therefore it does not appear, when constructed according to the specifications or claims, to be adapted to prevent some of the moisture collecting between courses of a brick wall from seeping through the inside wall of a building.

The alleged infringing device manufactured by the Van Noorden Company also consists of thin sheet metal, such as copper, pressed so as to form a single flat rib in the center, running longitudinally of the sheet, which may be several feet in length; the top of the rib being about the width of an ordinary brick, and about three-eighths of an inch in height. At intervals of about the length of the brick in common use, a transverse depression is made in the rib so that the bottom of the depression is nearly in the same horizontal plane as the bottom of the flashing, which permits any moisture collecting on either side of the rib venting through the outside wall rather than through the inside wall of the building. The edges of the rib as manufactured by the Van Noorden Company are also inclined inward at an acute angle so that the end or transverse section of the rib presents a dovetail effect; each section defined by the several depressions tapers slightly downward, or vertically, from the middle toward the edge of the depression, in contrast with the ribs of the Cheney device, which taper in the same horizontal plane; but whether the vertical tapering of the several sections of the Van Noorden flashing is by design or as a result of the force applied to create the depression does not clearly appear. A rough representation of the top and cross section view of the flashing manufactured by the Van Noorden Company is as follows:

Van Noorden Flashing.
(Plaintiff's Exhibit Nº 1)

Cross Section A-A

The entire face of the metal sheet out of which it is constructed, though it does not show in the above drawings, is also pressed or crimped, into alternate transverse smaller ribs and grooves, providing an effect similar to the familiar domestic article known as a washboard, and tends to bind the mortar more firmly to the flashing.

It is designed to be placed longitudinally along any course of masonry, such as brick walls, and when bedded in the mortar also performs the function of preventing the seepage of any accumulated moisture from above into and discoloring the inside walls of the building, since the edges of the flashing may be turned up or down as circumstances may require. While the rib running longitudinally of the wall prevents any lateral movement of the masonry, and the dovetail construction of the rib tends to prevent any vertical movement, it is difficult to see how the vertical tapering of each section toward the depression, or the depression itself, the sides of which form an obtuse angle with the face of the flashing, and have rounded edges, would in any appreciable degree counteract any force sufficient to cause a longitudinal movement of the masonry, if it became loose, or that they were designed for any purpose except to permit and aid the gradual removal of any moisture entering the wall from above through the outside wall.

It is claimed in the plaintiff's bill that the defendant's construction infringed patent No. 1,715,000, or the Cheney patent, and also patent No. 1,860,240, which is the Friedrich patent, and owned by the plaintiff.

The District Court found that the Cheney patent was a pioneer patent, and that the flashing constructed by the defendant performed the same function in substantially the same manner and therefore was an equivalent, and so infringed. It also held that it infringed the Friedrich patent.

■■ The primary defense to the Cheney patent was that the Van Noorden flashing did not infringe, as it did not perform the same function in substantially the same manner, and also that neither the Cheney patent nor the Friedrich patent disclosed any invention. The Van Noorden Company admitted, however, that if the Friedrich patent was valid, its form of flashing infringed.

Without determining whether the Cheney patent disclosed invention and is not a mechanical adaptation of the prior art, or whether it can be classed as a pioneer patent, we do not think the Van Noorden flashing is an infringement of the Cheney flashing patent when the latter is construed as limited by the amendment to his original claim 9. Because one device performs the same function does not alone render it an equivalent and establish infringement. It must be performed in substantially the same manner. While an inventor who discovers the first solution of a problem in the mechanical arts and obtains a patent for the same is entitled to a broad construction of his claim, it does not mean that other inventive geniuses are prevented from solving the same problem in a simpler or more effective manner by another method.

The idea of a "through wall interlocking flashing" did not originate in the mind of Cheney. One James White in 1890 invented a flashing (patent No. 423,888) "for walls and chimneys." His first claim is: "1. The combination, with a brick wall, of a flashing-plate *extended entirely through the same,* and having its opposite edges projected outside the wall and suitably bent to prevent the penetration of moisture below the plate, substantially as herein set forth." (Italics supplied.)

White, in describing his patent, added that "to prevent the displacement of the brick wall on the flashing-plate, the latter may be roughened by corrugations, as shown in Fig. 5" of the drawings accompanying his application, which showed alternate, but not tapering, ridges and grooves.

One John E. Davison also invented a through wall flashing device, as appears in patent No. 1,699,181, issued to him in 1926.

Cheney, while he, no doubt, improved on either of these earlier patented devices as a through wall flashing to be used in constructing brick walls, and especially in its interlocking feature, merely adopted the form of a device invented by Alexander E. Brown in 1901 for use primarily in constructing roofs, floors and walls. Brown at that time constructed his article of sheet iron as a substitute for the ordinary corrugated sheet iron roofing and side walls of buildings.

It appears by stipulation that Cheney's file wrapper discloses that in applying for his patent he originally made fourteen claims, all of which were rejected by the Commissioner of Patents as previously met by patents issued to Brown and several others, including a patent issued to David W. Bovee in 1905 for dovetailed reinforcing and rendering waterproof walls constructed of cement.

Under "Remarks," however, the Commissioner evidently misconceived the scope of the Brown patent, if used as a flashing, when

he held that where the grooves and ridges tapered in the same direction on one side of the flashing, it would not prevent a lateral movement of a wall. The drawings furnished with the application of Brown, however, disclosed two constructions, either of which was possible under his claim, which reads as follows:

"An article of manufacture, consisting of a piece or sheet of metal, or other suitable material, having a series of dovetail-shaped corrugations, each of said corrugations having the same depth throughout its length and a taper which is reversed with respect to that of the next adjacent corrugation in the series, substantially as shown and described."

The second method as shown by the drawings accompanying his application discloses a form of sheet metal with alternate ribs and grooves tapering in opposite directions. This second form is shown in the following figure 2 of the drawings accompanying the Brown application:

*Brown U.S.Pat.No 689,281*
*Fig 2*

It is obvious, we think, that this arrangement is just as effective as either of Cheney's suggested arrangements of his ribs and grooves in preventing a lateral movement of masonry.

Cheney, in order to avoid anticipation by the Brown and the other patents named, abandoned all his claims, but was permitted to amend claims 7 and 9, whereby 9 became claim 2 of his patent, which it is now urged is infringed by the Van Noorden flashing as an equivalent.

Cheney's original claims from 1 to 6, which he finally disclaimed as being too broad, were as follows:

"1. A flashing of sheet material and embodying therein a plurality of grooves and ridges.

"2. A flashing of sheet material and embodying therein a plurality of grooves and ridges tapered longitudinally thereof.

"3. A flashing of sheet material and embodying therein a plurality of grooves and ridges tapered longitudinally thereof in different directions.

"4. A flashing of sheet material and embodying therein a plurality of alternately arranged dovetail shaped grooves and ridges.

"5. A flashing of sheet material and embodying therein a plurality of alternately arranged dovetail shaped grooves and ridges each tapering longitudinally thereof.

"6. A flashing of sheet material and embodying therein a plurality of alternately arranged dovetail shaped grooves and ridges each tapering longitudinally thereof in different directions."

■ Claim 9 originally read as follows:

"9. A building construction comprising superposed courses of masonry, a layer of binding material for said courses, and a sheet metal flashing embedded within said binding material and embodying therein a plurality of grooves and ridges each having sides inclined to the face of the material and also tapering longitudinally thereof, whereby the masonry is bonded together."

Brown's patent was properly held to anticipate all of these claims, but Cheney was permitted to amend claim 9 by adding thereto after the word "thereof," the following: "in opposite directions on both sides thereof respectively," and at the end of the claim the following: "in all directions," so that claim 9 (now claim 2) reads as follows:

"2. A building construction comprising superposed courses of masonry, a layer of binding material for said courses, and a section of sheet metal flashing embedded within said binding material, said section embodying therein a plurality of grooves and ridges each having sides inclined to the face of the material and also tapering longitudinally thereof in opposite directions on both sides thereof respectively, whereby the masonry is bonded together in all directions."

Cheney, by this action, whether a primary patent or not, must be held to have narrowed his form of construction to the form described in his amended claim.

The Supreme Court stated the law applying to rejected and amended claims in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 443, 47 S. Ct. 136, 141, 71 L. Ed. 335:

"It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by

the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent. Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723. If dissatisfied with the rejection he should pursue his remedy by appeal; and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Shepard v. Carrigan, supra [page 597 of 116 U. S., 6 S. Ct. 493]; Hubbell v. United States, 179 U. S. 77, 83, 21 S. Ct. 24, 45 L. Ed. 95. Whether the examiner was right or wrong in rejecting the original claim, the court is not to inquire. Hubbell v. United States, supra [page 83 of 179 U. S., 21 S. Ct. 24]. The applicant having limited his claim by amendment and accepted a patent, brings himself within the rules that if the claim to a combination be restricted to specified elements, all must be regarded as material, and that limitations imposed by the inventor, especially such as were introduced into an application after it had been persistently rejected, must be strictly construed against the inventor and looked upon as disclaimers. Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 598, 6 S. Ct. 493 [29 L. Ed. 723], supra; Hubbell v. United States, 179 U. S. 85, 21 S. Ct. 24 [45 L. Ed. 95], supra. The patentee is thereafter estopped to claim the benefit of his rejected claim or such a construction of his amended claim as would be equivalent thereto. Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 429, 14 S. Ct. 627, 38 L. Ed. 500. So where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he *'may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to a disclaimer.'* Weber Elec. Co. v. E. H. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 603, 65 L. Ed. 1162." (Italics supplied.)

Also see Smith v. Magic City Kennel Club, Inc., 282 U. S. 784, 789, 790, 51 S. Ct. 291, 75 L. Ed. 707; Weber Elec. Co. v. E. H. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162.

It is elementary law that a function is not patentable.

"'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572 [17 L. Ed. 650], 'involves substantial identity, whether that identity be described by the terms "same principle," "same modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent." '

"We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there. As was said in Burr v. Duryee, 1 Wall. 531, 573 [17 L. Ed. 650], an infringement 'is a copy of the thing described in the specification of the patentee, either without variation, or with such variations as are consistent with its being in substance the same thing. If the invention of the patentee be a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of mechanism which performs the same service or produces the same effect in the same way, or substantially the same way. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are therefore mere equivalents for those of the other.' " Boyden Power-Brake Co. v. Westinghouse, 170 U. S. 537, 568, 569, 18 S. Ct. 707, 722, 42 L. Ed. 1136.

Cheney has chosen the form in which his patented flashing must be constructed by his amendment to claim 9, and has abandoned all broader claims.

The construction of a flashing having a single flat rib with parallel sides extending

lengthwise of the flashing and wall, with depressions in the rib at regular intervals, each section of the rib thus formed tapering vertically from its center toward the depressions at each end, the entire sheet being crimped into alternate ridges and grooves, with complementary grooves and ridges on the opposite side of the sheet, giving a corrugated effect to each face, the sides of which corrugations do not taper but are parallel, cannot be said, we think, to be an equivalent of the Cheney flashing, with a plurality of ribs and grooves tapering horizontally in opposite directions and designed to extend across the wall. While the Van Noorden flashing may accomplish practically the same function, it cannot be said to do it in substantially the same manner. It may be the "equal" in performing the function of binding the masonry in two directions, and in the proper disposal of accumulated moisture within the walls, but is not the "equivalent" as that term is understood in the law of patents. Werner v. King, 96 U. S. 218, 24 L. Ed. 613; Dryfoos v. Wiese, 124 U. S. 32, 8 S. Ct. 354, 31 L. Ed. 362; Forncrook v. Root, 127 U. S. 176, 8 S. Ct. 1247, 32 L. Ed. 97.

Any lateral movement of the masonry is prevented by the ribs of the Van Noorden flashing. It is not accomplished by the tapering of the alternate ribs and grooves adopted by Cheney and extending across the wall. Any longitudinal movement of the masonry is checked by the Van Noorden flashing, if at all, by the depressions and corrugated effect, but in the Cheney flashing by the sides of the plurality of ribs. Experts, however, say that the prevention of a longitudinal movement is not a practical problem in building brick walls of large buildings.

While it is admitted that, if the Friedrich patent is valid, the Van Noorden flashing infringes, it is contended by the defendant that the Friedrich patent contains no useful or novel advance over the prior art. The claims of the Friedrich patent, which it is contended the Van Noorden flashing infringes, are as follows:

"2. As an article of manufacture, a flashing plate relatively longer than its width formed with a single longitudinally extending rib, said rib which is located midway of the width of the flashing plate being dovetail in shape in cross sections, whereby, when a layer of cement, or the like, is placed on the under side of the flashing plate, it will fill the rib portion, whereby the plate would be se-cured to the wall against lateral and vertical movement.

"3. As an article of manufacture, a metal flashing having a dovetail longitudinally extending rib, the opposite side edges of the flashing being bendable for engaging the inner and outer faces of a wall, when applied, whereby, when a layer of cement is placed on the upper surface of the flashing, and a block of concrete placed thereon, it will be laterally and vertically secured by said rib against displacement."

"5. A wall flashing comprising a strip of sheet metal formed with a longitudinal and centrally disposed rib, said rib being formed with a flat top portion connected to said flashing by side walls which form acute angles at their intersections with said flashing and said flat top portion.

"6. A building construction comprising superposed courses of masonry interspaced by beds of mortar, and the like, and a flashing sheet of desired width to extend substantially through said wall imbedded in the mortar of one of said courses and provided with centrally arranged longitudinally extending, raised areas providing dovetailed shaped recesses for the reception of mortar together against movement of the sheet vertically and laterally."

The fact that Cheney has never made any flashings under it tends to bear out the defendant's claim that the Friedrich flashing, at least, contained no useful invention, or improvement over the prior art.

The Friedrich device was more particularly designed for use under cornices or in walls extending above a roof, and to lock the cornice to the course below, and to waterproof the joint between the wall and the roof. It could not be used effectively, if constructed according to the claims or the drawings, to dispose of moisture collecting within the walls of a brick building to prevent its seeping through the inside walls into the building, as the rib running lengthwise of the wall would prevent the venting through the outside wall of any moisture collecting on the side of the rib next to the inner side of the wall. Such moisture could only find vent through the inner wall of the building.

It might prevent lateral as well as vertical movement of a coping, but it could not effectively prevent any strong longitudinal movement along the wall or parapet.

Patent No. 1,666,231 issued to Arthur Bloxham in April, 1928, had a vertical ridge

extending lengthwise of the wall to prevent lateral movement of the coping.

It is contended that the dovetail effect of a single rib in preventing a vertical and lateral movement constitutes invention, but a dovetail effect in strengthening and waterproofing masonry and preventing movement was old. David W. Bovee had employed it in patent No. 842,068, and Robert Edmondson in patent No. 873,739 in strengthening and waterproofing cement structures. Cheney adopted it in his patent for a through wall flashing, No. 1,715,000, considered supra. The laying of a single dovetail rib lengthwise of a wall for a bond instead of crosswise, or making the flashing of sufficient width and flexibility to permit workmen installing it to fit it to the edges of the wall or the roof of a building, in order to provide a waterproof joint with the roof, did not require any inventive faculty. The last two features would be suggested to the mind of any ordinary experienced and skillful roofer or workman accustomed to installing flashings.

We are, therefore, of the opinion that on the record, notwithstanding the weight to be given to the findings of fact by the trial court, and the presumption attending the granting of a patent, the flashing constructed by the defendant does not infringe the Cheney patent, and that the Friedrich flashing contained nothing which can be termed either novel or useful over the prior art.

The decrees of the District Court are reversed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

### On Petition for Rehearing.

The petitioner assigns as a ground for a rehearing that this court misunderstood and misinterpreted the Brown patent, No. 684,281, and its holding that the device described in its claim as shown in the accompanying drawings would be as effective as the Cheney device in preventing lateral movement of masonry is unsupported by the testimony.

Counsel seems to have overlooked the obvious fact that there were two sides to the Brown device when constructed according to Figure 2 as shown in the opinion, and that both sides are embedded in mortar. While the top side, as viewed in the drawing, would, it is true, prevent movement of the masonry in only one direction, the supplementary ribs and grooves underneath would prevent any movement in the opposite direction, since the grooves underneath taper in the opposite direction to the grooves on the top side.

We find no inconsistency in the application of the limitation in the claims in the Cheney patent by the amendment, because the limitation applies also to the Van Noorden structure. Claim 2 of the Cheney patent in the form as amended is to be construed in accordance with the drawings and specifications. If it be placed longitudinally of the wall, it would not act as a flashing at all. It was designed to be placed transversely of the wall to ensure drainage of the moisture outside the wall.

Whether the crimping of the metal in the Van Noorden structure tends to bind the mortar more firmly to the flashing is immaterial to the result of the opinion. The opinion clearly questions any effect it may have as to preventing any longitudinal movement of the masonry, when it is stated that "any longitudinal movement of the masonry is checked by the Van Noorden flashing, *if at all,* by the depressions and corrugated effect." Even though the corrugated effect did not bind the mortar more firmly to the flashing, the masonry would slide less easily over the corrugations than if the flashing was smooth, though we doubt if it would have much effect in retarding a longitudinal movement of a solid masonry wall, if a force sufficient to move it was once supplied.

If the Friedrich device contains no element permitting the drainage of moisture to outer side of the wall of a building, it could hardly be a useful invention for that purpose; and if it was no advance over the prior art, it was not patentable. The commercial success of the Van Noorden device was due to the fact that it was adapted to be inserted as a flashing between the course of masonry in the side walls of a building, which the Friedrich device was not, and was never intended to be used for that purpose.

The contention that the rule of equivalence and novelty was applied in the opinion to the wrong structure is not borne out, we think, by the language of the opinion. By stating the general rule that a pioneer patent does not prevent other inventive geniuses from solving the same problem in a simpler and more effective manner by another method, this court did not necessarily find that the Van Noorden patent was the result of any inventive genius, or was patentable. It may well be, like the Friedrich device, simply an obvious application of the prior art to a problem.

The petition for rehearing is denied.