**Frank W. BUTLER and Catalina Yachts, Inc., a California Corporation, Appellants,**

v.

**Jack A. HELMS, d/b/a Jack A. Helms Company, Appellee.**

No. 76–1455.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 6, 1976.

Decided Jan. 26, 1977.

Robert E. Geauque, Encino, Cal. (H. Simmons Tate, Jr., Hamilton Osborne, Jr., Columbia, S.C., William A. Feinberg and Arthur R. Bergen, Encino, Cal., on brief), for appellants.

L. Lawton Rogers, III, Washington, D.C. (Thomas E. McCutchen, Columbia, S.C., on brief), for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

WIDENER, Circuit Judge:

The patent, Butler 3,805,724, claims 1 and 2 which are in controversy here, is a canopy adapted to cover in a watertight manner the upper portion of the access opening of the cabin of a sailboat. The canopy is connected to the cabin wall structure by four rods, each of which is pivoted on each end, both on the canopy and on the cabin wall, two rods on either side. When the canopy is in its raised position, it is in contact with the mast and in the raised position held by a fastener means, a rigid link, connected between the canopy and the mast to maintain the canopy in the open position.[1]

The district court held claims 1 and 2 of the patent invalid as anticipated under 35 U.S.C. § 102. We agree.

■ We are of opinion Aquarius 21, another make of sailboat (Butler 724 now being used at least on Catalina boats and not on Aquarius 21), and known to the inventor well prior to the date of his invention, incorporated each essential feature of the claimed invention claimed in claims 1 and 2. Every item of structure and function recited in the claims is disclosed by Aquarius 21 with one insignificant exception hereafter mentioned.

The only thing in claims 1 and 2 not disclosed in Aquarius 21 is the structural recital that the canopy in Butler 724 has the "forward position in contact with . . . . [the] mast" when the canopy is in its open or raised position. In Aquarius 21, the canopy itself does not actually touch the mast. Rather, it is held in the open position by a metal bracket on the canopy being brought adjacent to a metal bracket on the mast and held there by means of a toggle pin being placed through adjacent holes in each of said brackets. In Butler 724, the forward edge of the canopy has a downturned lip which is brought against the mast and, then, a U-shaped fitting, with the open side upward, the forward side of which slides in a groove in the mast, is brought up beneath the downturned lip of the forward edge of the canopy and holds the canopy in its upright or open position.

Claim 1 calls the U-shaped fitting in Butler 724 a "second means comprising a rigid link connected between said mast and said forward position of said canopy to maintain said canopy in the open position."

■ We think the just above quoted portion of claim 1 reads on the brackets and toggle pin in Aquarius 21 and that such Aquarius 21 brackets and toggle pin comprise a rigid link no different in consequence from the rigid link in Butler 724. Both the brackets and toggle pin on the one hand, and the U-shaped fitting and lip on the other, perform precisely the same function, that is "to maintain said canopy in the open position."

In brief and on oral argument, the virtue claimed for Butler 724 over Aquarius 21 is that the forward part of the canopy in contact with the mast is recessed so that the recess fits against the mast for a portion of the mast's circumference, and, when so positioned, the canopy cannot move transversely because of the recessed area fit against the mast. The difficulty with this

---

1. Refer to drawing at end of opinion. The claims call for a plurality of rods. Four is merely illustrative.

arguable virtue is that it is not claimed. Neither in the claims nor specifications is any virtue or improvement claimed because the front edge of the canopy is in contact with the mast or because of the fact that the recessed portion of the canopy is against the mast. Indeed, the recess feature of the canopy does not appear in the claims at all. The only claim is that the canopy is held in its upright or open position by the rigid link precisely as is done in Aquarius 21. Nothing in the claims even suggests transverse stability as a result of the claim.

It is worth noting that the prior art referred to in the background of the invention, column 1, lines 5 to 40, is a type of canopy, the raising and lowering of which is effected through the use of a pulley which would raise the canopy directly above the access opening instead of the forward position it would occupy were it against or near the mast. Neither Aquarius 21 nor any like structure was referred to, and no attempt is made to explain or claim advantage over such a structure. It is true that the prior art device operated by pulleys is described in the background cited above as "wobbl[y]", but such wobbles were because the canopy was not "positively secured" as in the case both in Aquarius 21 and Butler 724.

■ The claim is that the "rigid link" is "to maintain said canopy in the open position." Claim 1. "Where a claim ascribes a function [here to maintain said canopy in the open position] to any of the things [here the rigid link] it specifies, that ascription is a limit of that claim." 4A. *Deller, Walker on Patents*, § 255, at 155 (2d ed. 1965). To ignore the express functional limitation of the claim would be to create a new claim, not interpret the one granted. *Anthony v. Gennert*, 108 F. 396 (3rd Cir. 1901); *Masseth v. Larkin*, 111 F. 409 (C.C.W.D.Pa. 1901). With the sole claim (in Butler 724) for the rigid link being to maintain the canopy in the open position, and no purpose disclosed or shown in the claims or specification for contact with the mast of the lip

on the forward edge of the canopy other than to serve for insertion of the U–shaped fitting, we think the disclosures of Aquarius 21 are those "substantially as described in this patent". *Forncrook v. Root*, 127 U.S. 176, 8 S.Ct. 1247, 32 L.Ed. 97 (1888) (the Court quoting the Circuit Court of Appeals with approval). If there is any difference between Aquarius 21 and the claims of Butler 724, even read in the light of the specifications, it is no more than "[the] shadow of a shade of an idea." *Atlantic Works v. Brady*, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438 (Oct. term 1882).

As we have above recited, the downturned lip on the forward edge of the canopy can have no use with respect to the invention other than to serve for the insertion of the U-shaped fitting. If that is not true, the recitation in the claim that the downturned lip on the forward part of the canopy is in contact with the mast is nothing more than the recitation of structure for accomplishing a non-inventive function. Mere contact with the mast could accomplish nothing else and nothing is ascribed to it.·

■ Assuming a non-inventive function for the contact of the forward edge of the canopy with the mast, we think the rule should apply which appears in *Application of Harmon*, 222 F.2d 743, 42 C.C.P.A. 921 (1955), and *In re Bisley*, 197 F.2d 355, 39 C.C.P.A. 982 (1952),· although stated in those cases in the language of obviousness rather than anticipation. Rosenberg, *Patent Law Fundamentals*, p. 237–8. *Harmon* states the rule: "The recitation of structure in the claims for accomplishing a non-inventive function will not cause the claims to be patentable over the prior art notwithstanding that these non-inventive features are not shown in the prior art." p. 747. We think the just quoted rule should also apply to cases of anticipation under § 102 such as the present case so that a merely extraneous structural feature recited in a claim, which has no function with respect to the invention claimed, should not prevent invalidity for anticipation if all of the require-

ments of anticipation are otherwise met as they are here.

We are aware that summary judgment should be granted in patent cases only with great caution and when there is no substantial issue of material fact. *Morpul, Inc. v. Glen Raven Knitting Mills, Inc.*, 357 F.2d 732 (4th Cir. 1966).

The district court apparently also based its ruling on obviousness. Because we think the claims are invalid as having been anticipated, we have no occasion to express an opinion on that question.

The judgment of the district court is accordingly

AFFIRMED.