**JOY MANUFACTURING COMPANY,
Plaintiff,**

v.

**INGERSOLL–RAND COMPANY,
Defendant.**

Civ. A. No. 74–321–CH.

United States District Court,
S. D. West Virginia.

Dec. 5, 1977.

Raymond G. Hasley, Pittsburgh, Pa., Charles A. Tutwiler, Welch, W. Va., for plaintiff.

Howard R. Klostermeyer, Spilman, Thomas, Battle & Klostermeyer, Lee F.

Feinberg, Charleston, W. Va., John M. Calimafde, Hopgood, Calimafde, Kalil, Blaustein & Lieberman, Robert A. Schroeder, New York City, for defendant.

### OPINION

HADEN, District Judge.

In this action the Plaintiff, Joy Manufacturing Company, has charged Defendant, Ingersoll-Rand Company, with infringement of U. S. Letters Patent 3,322,378 which describes a tripod drill support. Plaintiff, the owner of the patent-in-suit, seeks a judgment that Plaintiff's patent is valid and has been infringed, and asks that Defendant be enjoined against further infringement and that an accounting be held to determine damages. Defendant claims that the patent-in-suit is invalid and denies infringement.

Plaintiff is a Pennsylvania corporation, with its principal office at Pittsburgh, Pennsylvania. Plaintiff also is qualified to do business in the State of West Virginia. Defendant is a New Jersey corporation and is qualified to do business in the State of West Virginia. There is no dispute as to the Court's jurisdiction of this action under 28 U.S.C. § 1338(a), and venue is properly laid in this District under 28 U.S.C. §§ 1391(c) and 1400(b).

Both Plaintiff and Defendant manufacture rock drilling machines. The Plaintiff was assigned U. S. Patent No. 3,322,378, originally issued to C. T. Thompson, a former employee of the Plaintiff.

U. S. Patent 3,322,378 is for a tripod drill support system. The claimed novelty of this patent is the tripod support or mount which is comprised of two hydraulic cylinders (extensible legs) attached to a drill support tower to form a tripod. The hydraulic cylinders are attached at one end to the tower and at the other end to the frame of the drilling device by universal joints. The tower is likewise attached to the frame by a universal connection. The universality of the joints thus enables the support tower to move in any conical position; i. e. it can combine both forward and lateral movement in any desired position.

The broadest claim of the Thompson patent is claim one, which describes a tripod support for a drilling device comprised of a mobile support having an elongated generally horizontal frame; an elongated trunion member having a bottom end thereof universally pivotally mounted on a forward portion of said frame and extending upwardly therefrom; a pair of extensible leg members having respective one ends universally pivotally secured to rearward portions of said frame transversely spaced from each other, other ends of said leg members being universally pivotally secured to said trunion member at points upwardly spaced from said frame; an elongated guide frame means for slidably mounting said guide frame on said trunion member for longitudinal movement therealong.

Claim two is more limited in that it calls for a "first power means", which is a drill motor or hammer, and a "second power means", which is a mechanism for moving the drill motor itself.

Claim three merely adds to claim one the limitation that the extensible legs (hydraulic cylinders) are attached to upper portions of the tower.

Claim four adds to claim one the limitation that the guide frame (part of the tower) is twice as long as the trunion (also part of the tower).

This is an action for infringement of the patent held by the Plaintiff, but it has been stipulated by the Defendant, Ingersoll-Rand Company (hereinafter cited as IR) "that all of the elements in claim one with the exception of the elongated generally horizontal frame finds response in the accused machine, the CM–1000." Thus, IR has admitted infringement if this Court determines that the CM–1000 has an elongated generally horizontal frame, as does the patent-in-suit.

After reviewing the evidence and the exhibits submitted by both parties, the Court finds that the Defendant's CM–1000 does incorporate an elongated generally horizon-

tal frame as described in claim one of the Thompson patent. Thus, if the Thompson patent is found to be valid then the Defendant will have infringed the Plaintiff's patent.

The Court also finds that the Defendant knew of the Plaintiff's patent on its drilling device called the Joy "Mustang"; and that the Defendant intentionally sought to compete with this drilling device of the Plaintiff by manufacturing a similar such device of its own. Such intent is demonstrated in Defendant's Development Memorandum (Plaintiff's Exhibit 14B), where it is demonstrated that Defendants desired a drill which would compete with the Joy "Mustang". The Development Memorandum indicates that the Defendant investigated the design of the Plaintiff's "Mustang" drill. Defendant later designed a tripod drill support system which admittedly is the same as the Plaintiff's "Mustang". Such evidence creates the compelling inference, which the Court accepts, that the Defendant intentionally copied the patent of the Plaintiff. Thus, if the patent of the Plaintiff is valid, then the Defendant has intentionally infringed such patent.

■ Once a patent is granted by the U. S. Patent Office, it is presumed valid under 35 U.S.C. § 282. But this presumption of validity is weakened where relevant prior art was not considered by the patent examiner. *Christopher J. Foster, Inc. v. Newport News S. and D. Dock*, 531 F.2d 1243 (4th Cir. 1975); and *Blumcraft of Pittsburgh v. Citizens National Bank*, 407 F.2d 557 (4th Cir.), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969). Since relevant prior art was not considered by the patent examiner, the presumption of validity of the Thompson patent is weakened.

■ The granting of patents is not to be freely given. Only inventions and discoveries which further human knowledge and are new and useful, justify the special inducement of a limited private monopoly. Thus Courts are called upon to scrutinize any invention claimed to be patentable. *Graham v. John Deere Company*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The Defendant claims that the Thompson patent is invalid because such a device would have been obvious to a person possessing ordinary skill in the art of designing rock drilling devices. Such defense is codified under 35 U.S.C. § 103, which states:

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

■ Obviousness is a question of law determined against the factual background of the state of the prior art and claimed improvement on it. *Deering Milliken Research Corporation v. Beaunit Corporation*, 538 F.2d 1022 (4th Cir. 1976), citing *Stamicarbon, N. V. v. Escambia Chemical Corporation*, 430 F.2d 920 (5th Cir.), *cert. denied*, 400 U.S. 944, 91 S.Ct. 245, 27 L.Ed.2d 248 (1970). The factual inquiries required by Section 103 are stated in *Graham v. John Deere Company*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The trial court must (1) determine the scope and content of the prior art; (2) ascertain the differences between the prior art and the claims at issue; (3) and resolve the level of ordinary skill in the pertinent art.

IR in asserting its defense of obviousness, introduced into evidence three prior patents involving tripod drill support devices. Because the claim of the Thompson patent involved a tripod drill support device, the three prior patents introduced by IR are relevant prior art, as would be any other prior patent involving tripod drill supports.

The Defendant introduced into evidence U. S. Patent No. 3,035,646, which involved a crane type pile driving apparatus. (See Defendant's Exhibit 2 and 2a) Patent 3,035,646 was issued to John Ragnar Johannsson. The Johannsson patent incorporated struts (extensible arms) that "are connected at

their upper ends by universal joints to a bracket . . ." The lower ends of the struts (extensible arms) "are pivotally connected by pivot pins disposed at right angles to the axle, so that the connections of the struts to the axle form universal joints." (See Defendant's Exhibit 2, page 3, lines 25 to 35.) Thus the connection of the extensible arms in the Johannsson drill support were exactly the same as those of the patent-in-suit, both being universally connected at each end. Defendant's expert also testified that the Johannsson machine consisted of a tripodal support with universal connections at the same points as the patent-in-suit. (Tr. 198–200) Although there was some dispute as to whether the boom in the Johannsson machine was universally connected to the frame, the Court does not find such distinction crucial.

The Defendant also introduced into evidence testimony and evidence referring to a drilling machine called the "Halco Tiger". Such machine received letters of patent from the Union of South Africa in May, 1962, among others. (Defendant's Exhibits 3–3d) The Halco Tiger is a mobile, self-propelled drilling apparatus. The drill support consists of two hydraulically extensible legs connected to a boom which form a tripod. The extensible legs are connected to the frame and the boom with universal joints, and the boom is pivotally mounted to the frame at two separate points, which allow universal movement. The drill support mechanism on the Halco Tiger allows for complete universal movement of the boom, exactly as the tripodal drill support of the Plaintiff's patent-in-suit. Such universal movement of the Halco Tiger is asserted in claims seven and eight of the patent, and can be readily seen in the diagrams and brochures of that machine. The tripodal structure depicted in the Halco Tiger nearly duplicates the tripodal structure of the patent-in-suit. It incorporates the same tripodal structure with universal connections as does the patent-in-suit, and allows for the same conical movement of the boom. The Defendant's expert testified to such similarity (Tr. 196–197), and such was not disputed by Plaintiff's expert, except to

state that the angle formed by the two extensible arms of the tripodal support was different in the Halco Tiger than in the patent-in-suit. Also, the Plaintiff's expert stated that there was a significant difference in the dimensions of the tripodal support. (Tr. 242–246) Neither of these distinctions are claimed in the Thompson patent. Thus they are not part of the patented device. *Butler v. Helms*, 550 F.2d 954 (4th Cir. 1977).

Finally, the Defendant introduced into evidence testimony and exhibits concerning a French patent describing a post hole digger. A patent was issued by the French Republic for this machine on September 2, 1957. The French patent depicts a drilling apparatus similar to that of the Halco Tiger. It is a mobile drilling device which uses a tripodal support system. The tripod consists of two extensible arms and a boom which contains the actual drilling mechanism. Although the patent language does not disclose universal connections of the extensible arms and the boom to the frame, such may be reasonably deducted after reading the entire description of the boom's forward and lateral movement. The patent states that the extensible arms may be lengthened or shortened separately or together, which would control rotation and raising and lowering of the boom; such "combination of these controls enabling us to obtain all movements necessary for digging." As in the Halco Tiger, the French patent depicted the boom of the drilling apparatus as being pivotally mounted to the frame at two different points. Such double pivots allowed forward and lateral movement of the boom in a universal manner. Again, Defendant's expert testified that the French patent depicted a tripodal structure the same as that depicted in the patent-in-suit.

With regard to the level of skill necessary to construct a drill support system, such as the patent-in-suit, the Court listened to both Plaintiff's and Defendant's expert witnesses, as well as Mr. Thompson, the original patentor. The Court determines that because of the similarity between the prior

art introduced by the Defendant and the patent-in-suit, that a person of ordinary skill in the art of designing drilling apparatus would have been able to design the tripodal support system depicted in the patent-in-suit. The original patentor, Mr. Thompson, almost admitted such in a pretrial deposition when he replied as follows:

"Q  My question to you, sir, isn't it a fact that once you decide on that objective, aiming that drill at the ground at a certain angle irrespective of the slope of that ground, doesn't it necessarily follow that you must have a universal connection between that tower and the supporting frame?

A  Yes. If I'm going to move in two coordinates I have to have some kind of intersecting motion, yes.

Q  Once you decide or recognize that you need a universal connection and you want to give it strength, doesn't it follow that you need a tripod or bipod or quadrapod?

A  Got to give it strength. You've got to give it strength. What you have done is you've gone through the process. If I gave you the problem you probably could have made it, the invention."

Based upon the relevant prior art introduced by the Defendant, the testimony of Mr. Thompson and both experts, the Court finds that use of a universally connected tripod drill support system, such as that depicted in the patent-in-suit, would have been reasonably obvious to one skilled in the art of rock drill design.

It has been suggested to this Court that Plaintiff's drill support system was a combination of old elements which produce a synergistic result through novel combination. Having determined that the Thompson patent was reasonably obvious to one with ordinary skill in the art, the Court must determine whether the combination of these old and obvious parts may produce a new and patentable combination. *Sakaraida v. Ag Pro, Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Anderson's Black Rock Company v. Pavement Salvage Company, Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

The Court does not find that the evidence demonstrated any synergistic result from a combination of old elements in the Thompson patent. The evidence disclosed a tripod drill support system which was universally connected at each fastening point, thus enabling universal movement of the drilling apparatus. The evidence disclosed that such universal movement capability in drilling devices has been long known in the prior art. The exact adaptation of a tripod drill support capable of universal movement had not been produced in the type of drilling device which Mr. Thompson's patent covered, but commercial success and a more convenient device are not patentable unless they produce a new or different function within the test of validity of combination patents. *Sakaraida v. Ag Pro, Inc., supra,* citing *Anderson's Black Rock v. Pavement Salvage Company, supra.*

Mr. Thompson's tripod drill support performed no new function with respect to previous tripod drill supports in the prior art. Mr. Thompson admitted that functionally his patent-in-suit was no different than an early drill support system which had been in the prior art for some time, except that the patent-in-suit could accommodate twenty foot drill steels. (Tr. 73–76)

Combination patent claims should be carefully scrutinized. *Great A & P Tea Company v. Supermarket Corporation*, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). This Court holds that the combination of elements depicted in the patent-in-suit No. 3,322,378, does not produce a new and novel device which is patentable according to the United States Constitution and 35 U.S.C. § 100, *et seq.*

There has been no infringement of Plaintiff's patent by the Defendant as said patent is invalid for obviousness under 35 U.S.C. § 103.

Pursuant to Defendant's Motion to Dismiss per *Rule* 41(b), the complaint of Joy Manufacturing Company shall be dismissed with prejudice, with costs to be paid by the

Plaintiff. As authorized by *Rule* 52(a), this Opinion is filed in lieu of separate findings of fact and conclusions of law.

The Clerk is directed to enter separate judgment in favor of the Defendant and to assess costs against the Plaintiffs per *Rule* 58.