**TALON, INC., Appellant,**

v.

**UNION SLIDE FASTENER, INC.,**
Appellee.

**UNION SLIDE FASTENER, INC.,**
Appellant,

v.

**TALON, INC., Appellee.**

No. 15714.

United States Court of Appeals
Ninth Circuit.

April 23, 1959.

732

Lyon & Lyon, Charles G. Lyon, Leonard S. Lyon, Los Angeles, Cal., McCoy, Greene, & TeGrotenhuis, William C. McCoy, William C. McCoy, Jr., Cleveland, Ohio, for appellant.

Delavan Smith, Edwin S. Shapiro, Smith & Auslander, William J. Graham, New York City, Alan D. Mockabee, Los Angeles, Cal., for appellee.

Before FEE, CHAMBERS and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

Talon, Inc., a Pennsylvania corporation, hereinafter designated Talon, instituted this action for a patent infringement against Union Slide Fastener, Inc., a California corporation, hereinafter designated Union, seeking relief by way of injunction and damage. Union denied the validity of Talon's patents, and by counterclaim Union charged Talon with an unlawful combination and conspiracy to restrain and monopolize trade. Union prayed for treble damages and attorney's fees against Talon.

The district court found and concluded that Talon's patents were invalid and

void and not infringed by Union. The district court adjudged that Talon take nothing, and that its complaint be dismissed. The court further concluded that Union take nothing on its counterclaim, and adjudged that the counterclaim be dismissed. The district court further adjudged that Union have and recover from Talon the sum of $20,000 for attorney's fees. Talon appeals from the judgment of the district court dismissing its complaint, and from the judgment of the district court awarding attorney's fees to Union. Union appeals from the judgment of the district court dismissing its counterclaim, and denying relief thereunder.

We will first consider the merits of Talon's appeal. The district court concluded that claims 1 through 4 and 16 and 17 of the United States Patent Number 2,078,017 to one Poux, and claims 1 through 4, 13, and 32 through 40 of the United States Letters Patent 2,437,793 to one Silberman were invalid and void. Talon has appealed to this Court only on the issue of the validity of the patent it acquired from Silberman, and the award of attorney's fees to Union.

### Validity and Infringement.

The Silberman patent in suit relates to zipper manufacturing machinery and describes a machine which takes a strip of metal at one point, fabric tape at another point, forms from the metal the individual metal zipper elements, attaches them to the side of the tape, and delivers the completed zipper tape or stringer at a third point. The machine accomplishes this by feeding the strip of metal into a punch press which forms the strip into the shape of a zipper element, cuts it from the strip, and by the use of a pair of jaws squeezes the element in the same operation onto the appropriate portion of the tape which is being drawn between the jaws. The operation is continuously repeated and the zipper elements are serially placed upon the tape forming a zipper chain. When two of these zipper chains are combined with a slider they make a conventional zipper— the slide operating over the zipper

chains, locks and unlocks each individual element depending on which direction the slide is moved.

Each of these interlocking zipper elements which serve to lock the two zipper chains together has a projection on one side and a recess on the other. The projections and recesses of the zipper elements on one chain interlock with the recesses and projections on the other chain, to hold the two chains together when the zipper is closed. These zipper elements must be made with great precision, be equally spaced a precise distance from each other, and be firmly clamped in perfect alignment on the edge of the fabric tape, at high speed and very low cost, in order to have a commercially acceptable product. Faulty spacing of the elements on the tape, failure to align all elements of the tape, or failure to firmly clamp each element in place produces unsatisfactory zippers. The requirement for precision, both in the making of these minute zipper elements and in their attachment to the tape, has long been recognized as one of the major problems in the zipper industry. This is reflected in the prior art which indicates the many zipper-making devices or combination of devices which have been patented in the zipper field.

The district court found, and Talon does not dispute, that each element in the Silberman device was known to the prior art. The court rejected Talon's argument that the Silberman patent was a true combination disclosing a new, additional and different function from any machine described in the prior art. The court held specifically that no new result was accomplished and that the patent was a non-patentable aggregation and not a combination.

Talon, on the other hand, claims that nowhere in the prior art is there described the same function which permits the simultaneous forming of the zipper elements and their attachment to the zipper tape while the element is kept under complete control. Talon claims that this is a new, additional and different function giving life to its patent and

making it a true combination.[1] Specifically this function is described in Talon's brief as lying "in the fact that the ram which forms the projections and recesses on the strip of metal while the end element is being clamped on the tape, also is the means which cuts off the end-most element as it actuates the closing jaws to attach the element to the tape which moves in a fixed path past the end of the strip. Thus the element is always under complete control while it is being clamped on the tape. There is a new cooperative relationship in the Silberman patent between the ram and the tools carried by or actuated by it which produces the new result of holding the strip and the end element in a vise-like grip to securely position the same as the legs are being closed about the tape and as the end element is being severed from the strip. Nowhere in the prior art do we find this cooperative relationship or this result."

■ Union contends that this control function of Silberman is not a part of the patent as it was not claimed or otherwise referred to in the Letters Patent. This contention is without merit. All the uses or functions of an invention are covered and secured by a single patent for that invention, and this includes even those not known to the inventor at the time the patent is granted and must be considered in determining the validity of the patent.[2]

The essential difference between Silberman and its predecessors in the prior zipper art is that in Silberman the metal strip from which the zipper element is cut remains intact and uncut until it has been moved into a position where, without further movement, the element is formed, and then with the same ram, cut from the strip and attached to the zipper tape. All of these functions are described in the prior patents either as part of one or two different machines. But nowhere in the prior art cited is there described a method by which all these functions are all accomplished while the zipper element is securely held in one place without its having to be moved while these functions are performed. All the previous methods require that the element be moved at least once while being formed, severed, or attached to the tape. The zipper element produced by the Silberman patent is held in what Talon calls a "vise-like grip" until it is attached to the tape. This Talon claims keeps the element under complete control. Control then is the essence of what Talon claims to be new and different about its patent. But at least one patent cited by Union, Sundback, Patent No. 1,331,884, which preceded Silberman, combined in one machine both the production of the zipper element and its attachment to a tape and also kept the element under control. Even though not held in the grip of the cutting ram, the Sundback element, during the steps from the time it is formed until attached to the zipper tape, is held in a framework consisting of the unused portion of the metal strip from which it has been cut. Possibly this does not give the complete control of Silberman, but it is control nonetheless.

■ It may be true that Silberman has improved on the prior art, and more particularly on the Sundback method.

1. Examples of combination patents which have been affirmed by the courts: Keystone Mfg. Co. v. Adams, 1893, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Diamond Rubber Co., of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Stearns v. Tinker & Rasor, 9 Cir., 1955, 220 F. 2d 49, certiorari denied 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741; Coleman Co. v. Holly Mfg. Co., 9 Cir., 1956, 233 F.2d 71, certiorari denied 352 U.S. 952, 77 S.Ct. 326, 1 L.Ed.2d 243.

2. Western Electric Co. v. LaRue, 1890, 139 U.S. 601, 605–607, 11 S.Ct. 670, 35 L.Ed. 294; United States v. Societe Anonyme Des Anciens Etablissements Cail, 1911, 224 U.S. 309, 328, 32 S.Ct. 479, 56 L.Ed. 778; I.T.S. Rubber Co. v. Panther Rubber Mfg. Co., 1 Cir., 1919, 260 F. 934, 937; Byers Mach. Co. v. Keystone Driller Co., 6 Cir., 1930, 44 F.2d 283; France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 1939, 106 F.2d 605, 609; 2 Walker on Patents (Diller's Edition 1937) 1278–1279, Sec. 279.

But the fact remains that all Silberman describes is a rearrangement of known elements in such a way that even though there is a "new cooperative relationship," the result is still only a form of control, slightly better than described in Sundback perhaps, but at best representing only mechanical skill, not invention. Improvement alone is not enough. Here each element performs the same mechanical function it has heretofore been known to perform. This fact distinguishes Stearns v. Tinker & Rasor, supra, relied on by Talon. In that case where this Court found a combination patent valid, it was specifically pointed out that the elements of the patent in suit "do functionally operate differently in the combination than they did in their old surroundings". 220 F.2d at page 57. The Stearns invention also filled a long felt need in its field. Here there is no evidence Silberman filled any need, any more than other machines already in use or disclosed.

 The machine described here does not produce a new, unusual or surprising result, or even any additional or different function to come within the applicable standard of invention required for a valid patent.[3] To merely accomplish the same result as had been obtained before in a different way through the aggregation of known elements, even though it might be with some improvement in efficiency, is not invention. The machine here produces what any mechanic skilled in the art would expect the same combination of the elements to produce.[4] It is no more than a slight step forward which results almost inevitably from the accumulated force of all that lies before it, lacking that necessary quantum of ingenuity to make it that next, inventive step, away from the prior art. We hold that the trial court did not err, and applied the proper standard of invention in concluding that the Silberman patent was invalid.

In view of what has just been stated, we deem it unnecessary to consider the questions of whether the patent was ever operative, whether Union was verbally licensed to use the Silberman patent, whether Talon is estopped from asserting the patent, or whether there was infringement.[5]

3. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; William T. Alvarado Sales Co. v. Rubaloff, 9 Cir., 1959, 263 F.2d 926; Bergman v. Aluminum Lock Shingle Corp. of America, 9 Cir., 1958, 251 F. 2d 801; Oriental Foods, Inc. v. Chun King Sales, Inc., 9 Cir., 1957, 244 F. 2d 909; Gratiot v. Farr Co., 9 Cir., 1956, 237 F.2d 940, certiorari denied 352 U.S. 1026, 77 S.Ct. 592, 1 L.Ed.2d 597; Schmeiser v. Thomasian, 9 Cir., 1955, 227 F.2d 875; Kwikset Locks Inc. v. Hillgren, 9 Cir., 1954, 210 F.2d 483, certiorari denied 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123; Hunter Douglas Corp. v. Lando Products, 9 Cir., 1954, 215 F. 2d 372; Berkley Pump Co. v. Jacuzzi Bros., 9 Cir., 1954, 214 F.2d 785; Thys Co. v. Oeste, D.C.Cal.1953, 111 F.Supp. 665, affirmed Thys Co. v. Anglo California Nat. Bank, 9 Cir., 1955, 219 F.2d 131, certiorari denied 349 U.S. 946, 75 S.Ct.

875, 99 L.Ed. 1272; Photochart v. Photo Patrol, Inc., 9 Cir., 1951, 189 F.2d 625, certiorari denied 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652; Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 1951, 191 F.2d 632.

4. 35 U.S.C.A. § 100, "Definitions * * * (a) The term 'invention' means invention or discovery. * * *"
Sec. 103. "Conditions for patentability; non-obvious subject matter
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." July 19, 1952, c. 950, Sec. 1, 66 Stat. 798.

5. Bergman v. Aluminum Lock Shingle Corp. of America, supra; Thys Co. v. Oeste, supra.

Before discussing Talon's appeal from the judgment of the district court awarding attorney's fees to Union, we will consider the merits of Union's appeal.

## Union's Appeal.

Union's three specifications of error [6] are based upon the alleged errors of the trial court in concluding that Union was not damaged by Talon's effort to control competition in violation of the anti-trust laws, and refusing to admit evidence of damage, or grant a new trial on the issue of damages. The specifications of error attack the conclusion of the district court that "The defendant Union having failed to prove injury to defendant Union in its business or property arising out of any of the actions complained of the in the Counterclaim, the Counterclaim cannot be maintained and must be dismissed."

In addition to establishing that Talon has violated the anti-trust laws, Union before being entitled to award of damages must establish that Talon's violations of the anti-trust laws were a proximate cause of injury to it, and must also prove the extent of that injury. As stated by this Court in Flintkote Company v. Lysfjord, 9 Cir., 1957, 246 F.2d 368, at page 392, certiorari denied 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46: "We take it that the controlling rule today in seeking damages for loss of profits in antitrust cases is that the plaintiff is required to establish with reasonable probability the existence of some causal connection between defendant's wrongful act and some loss of anticipated revenue." If union had established with reasonable probability the causal connection between the unlawful acts of Talon and the resultant injury to Union in its property or business, the district court, in the absence of evidence which would have established the amount or extent of damage with reasonable probability, could have made a just and reasonable estimate of damage based on relevant data and could have rendered its verdict accordingly. Bigelow v. R.K.O. Radio Pictures, Inc., 1945, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652. The distinction then is "between the quantum of proof necessary to show the *fact* as distinguished from the *amount* of damage." Flintkote Company v. Lysfjord, supra.

As stated by the Supreme Court in Story Parchment Co. v. Paterson Parchment Paper Co., 1930, 282 U.S. 555, at page 562, 51 S.Ct. 248, at page 250, 75 L.Ed. 544: " * * * there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of

6. Specifications of error in Union's appeal are:
"The District Court erred:
"1. By concluding that Union was not damaged and that there was no showing of causal connection between Talon's acts and Union's injuries, resulting from what the Court itself found to be a continuing attempt by Talon to control competition in a substantial portion of the zipper industry in violation of the anti-trust laws.
"2. By concluding that Talon's acts regarding Union were isolated acts rather than the concluding steps in the final links in a chain of anti-trust violations extending over a period of twenty years and directed not only against the public in general but at Union in particular.
"3. By failing to admit evidence or permit a new trial to show damage to Union flowing directly from Talon's efforts to control competition, comprising the acquisition by Talon of an invalid patent from a third party and the institution of an infringement suit against Union, in bad faith and without reasonable belief in the validity of Talon's patents; the introduction of a zipper sold below cost in Los Angeles, following a price control meeting in that city staged by Talon, and, under the pretext of examining Union's machines to determine possible infringements of which Talon had no knowledge, wrongfully appropriating improvements made by defendant."

their amount. * * * " See also Eastman Kodak Co. v. Southern Photo Material Co., 1926, 273 U.S. 359, 379, 47 S.Ct. 400, 71 L.Ed. 684.

Implicit in the conclusion of the district court that Union failed to prove injury to its business or property is the finding by the trial court that Union had not sustained the burden of proof resting upon it to establish that Talon's unlawful acts were the proximate cause of Union's loss of profits. The only ruling of the district court occurring during the trial of which Union complains in its brief relates to the rejection of Union's offer of proof [7] of loss of profits. No attempt or offer of Union was made to show that it sold less zipper machines or less zippers, or that it was forced to sell its machines or zippers at reduced prices, or that it was otherwise impaired or adversely affected in its business, because of the unlawful acts of Talon. In its offer of proof as to the fact of injury, all that Union offered was that a certified public accountant would testify that "the items in Schedule II regarding estimated net profits that should have been earned is based upon a figure of 10 per cent of the invested and borrowed long-term capital and is a fair return on such investment," and that "from an inspection of the books of Union Slide Fastener, Inc., the profits and losses shown in Schedule II for the fiscal years ending February 28, 1950, through February 28, 1955, * * * are a true reflection of the profits and/or losses during that period." Clearly the offer of proof of loss of hypothetical profits which the trial court rejected did not establish that

7. The offer of proof was made as follows: "Mr. Mockabee [Attorney for Union]: Regarding Schedule II, your Honor, Mr. Lester Greene of the firm of Greer and Greene, certified public accountants, would, if called to the stand, testify that the items in Schedule II regarding estimated net profits that should have been earned is based upon a figure of 10 per cent of the invested and borrowed long-term capital and is a fair return on such investment. And he would also testify that from an inspection of the books of Union Slide Fastener, Inc., the profits and losses shown in Schedule II for the fiscal years ending February 28, 1950, through February 28, 1955, the last year being estimated because the books are not yet closed, are a true reflection of the profits and/or losses during that period.

"The Court: Is that what his testimony would be?

"Mr. Mockabee: He would further testify with regard to items on the books, which appear on the books, with regard to the other schedules, your Honor.

"The Court: Is that your offer of proof?

"Mr. Mockabee: Yes, sir.

"Mr. Leonard Lyon [Attorney for Talon]: I object to the offer as incompetent, irrelevant and immaterial.

"The Court: Of course, the general objection is good and it will be sustained. In addition, there is no causal connection shown, nor can any be shown, between what the loss is on the books for each fiscal year and any activities of the plaintiff in this action. Nor is the estimated earnings any more than a mere estimate based upon 10 per cent of invested capital, which doesn't take into account competition, the competitive conditions in the industry. This is a very competitive industry. We have heard testimony on that already. It doesn't include new devices coming out, new companies coming into the field, and such things as the introduction of the Wilzip zipper, or some other zipper that might come in by some other company.

"Mr. Mockabee: Of course, we maintain, your Honor, that the introduction of the Wilzip zipper was not normal competition, but was the consummation of a threat to do what plaintiff had done back East, and that is wrecked small companies through the introduction of a cut-price zipper, if defendants and others on the West Coast did not maintain prices.

"The Court: All right. The objection to the offer of proof is sustained. You may step down, Mr. Witness."

* * * * *

"Mr. Mockabee: May I have the opportunity to present some law on the question of some of these matters in these schedules which have been objected to and the objection sustained?

"The Court: No, I am not going to permit you to do that. I have taken some proof on attorney's fees and expenses, and time. These other matters are pure speculation. It is highly speculative. From the facts of this case I can't see how loss would be sustained by defendant by virtue of quota agreements entered with other manufacturers * * * "

such loss was a proximate result of Talon's unlawful acts. Contrary to Union's argument, the trial court was not compelled to infer the fact of injury from the fact that certain of the unlawful acts of Talon were directed at Union. The action of the trial court in rejecting the proffered testimony is proper.

■■ On Union's motion for a new trial on the issue of damages, Union stated that its credit had been impaired, that it was unable to secure loans through lending agents, as a result of which it was forced to enter into a bankruptcy reorganization proceeding, all because of Talon's unlawful activities. Union did not claim that any of the matters set forth in the motion were "newly discovered", and no reason was advanced as to why such evidence was not offered at the trial of the action. The trial court denied Union's motion. The granting or refusal to grant a new trial rests in the sound discretion of the trial court. From the record in this case we are unable to hold that the trial court abused its discretion.

In light of the foregoing discussion, any consideration of the district court findings and conclusions that Talon was in violation of the anti-trust laws would be purely academic. Therefore, we deem it unnecessary to consider such findings and conclusions.

### Award of Attorney's Fees.

Talon claims that the court erred in awarding attorney's fees to Union in that the findings on which the award was made were clearly erroneous. The court in substance found that the action was brought by plaintiff in bad faith and without reasonable belief in the validity of the patent, and the litigation proves harassment and misconduct on plaintiff's part. Specifically, in respect to attorney's fees, the court found as follows:

Finding of Fact XLVII: "Having considered the acts of plaintiff leading up to the prosecution of this action against defendant and the fact that plaintiff has acted in bad faith and with unclean hands and

has misused its patents, defendant is entitled to reasonable attorney's fees. Taking into consideration the nature and complexity of the case; the length of the trial; the depositions taken; the experience, standing and eminence of counsel; the quality of skill demonstrated; the importance of the case to the plaintiff and defendant; the risk of the client and responsibility of the counsel; the time fairly and properly expended in preparation out of court; time in court; and the results accomplished, it is found that the reasonable value of the services of attorneys for the defendant is Twenty Thousand Dollars ($20,000.00).

"In considering the relative importance of the work done by defendant's attorneys with regard to violations of the anti-trust laws, while it was done in part in support of defendant's counterclaim, it was also done as part of the work showing the defense of unclean hands and the material regarding anti-trust violations was used as a shield in defense of the patent suit as well as a sword in connection with the counterclaim. It was nearly all pertinent to the defense to plaintiff's action, even though the counterclaim failed.

"It is found that the anti-trust problem is the only substantial issue if an appeal is taken. To provide for the contingency that on appeal the reviewing court should find no violation of anti-trust laws and be confronted with an apportionment of fees, and a remand for the purpose of fixing of fees without regard to services rendered on the anti-trust violation, then, excluding the services regarding anti-trust violations, the reasonable value of attorney's fees for defendant is Eighteen Thousand and Five Hundred Dollars ($18,500.00)."

Under 35 U.S.C.A. § 285, "the court in exceptional cases may award reasonable attorney fees to the prevailing par-

ty." This section enacted in 1952[8] adopted the language of the repealed 35 U.S.C.A. § 70, except that the wording "exceptional cases" was substituted for "in its [the court's] discretion." This change was explained by the revisors as merely expressing the intent of 35 U.S. C.A. § 70, as shown by its legislative history and as interpreted by the courts.[9] Both before and after the change in wording, this Court has interpreted this section as making the trial court's determination of attorney's fees final where it has clearly stated the basis for the award, "except where there is an abuse of discretion amounting to caprice or an erroneous conception of the law on the part of the trial judge."[10]

In the cases cited by Talon where attorney's fees were refused, the trial court either failed to make a finding of unfairness or bad faith on the part of the party against whom the award was made,[11] or the record did not support the finding of the trial court that there was bad faith.[12] But here the trial court's findings of fact that the action was brought by Talon without sufficient investigation, in bad faith, without reasonable belief in the validity of the patents, and that the litigation proves harassment and misconduct on the part of Talon, are all clearly supported by the record. We hold that the trial court did not abuse its discretion in awarding attorney's fees to Union.

It is to be noted in the findings of the district court that the court found that the reasonable value of the services of attorneys for the defendant is $20,000, but in the event that this court should find no violation of the anti-trust laws, then, excluding the services regarding anti-trust violation, the reasonable value of attorney's fees is $18,500.

We must confess that some of the findings quoted in the last two quoted paragraphs are, to say the least, unusual and create a problem for this Court where none would otherwise exist. Apparently the trial court was aware, having dismissed the counterclaim of Union, that it was without power to award attorney's fees to Union on its counterclaim. Section 15, Title 15 U.S.C.A. provides: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." We feel that the proper construction of the statute in regard to the award of attorney's fees was set forth in the following language in Alden-Rochelle, Inc. v. American Society of Composers, Authors and Publishers, D.C., 80 F.Supp. 888, at page 899:

"I have concluded that plaintiffs have not shown any injury from defendants' violations of the anti-trust laws and that, even if we presume injury, plaintiffs have not proved anything from which the court could approximate the damages. It follows that plaintiffs are not entitled to a money judgment and therefor [sic] cannot be awarded 'a reasonable attorney's fee' under 15 U.S. C.A. § 15. 'The court cannot properly award it except as an incident to the successful prosecution of a law action for recovery of damages based on a violation of the anti-trust laws.' Allen Bradley Co. v. Local [Union] No. 3, D.C., 51 F.Supp. 36, at page

8. July 19, 1952, c. 950, Sec. 1, 66 Stat. 813.

9. U.S.Code Congressional and Administrative News 1952, p. 2423.

10. Dubil v. Rayford Camp & Co., 9 Cir., 1950, 184 F.2d 899, 903; Shingle Product Patents v. Gleason, 9 Cir., 1954, 211 F. 2d 437; Pacific Contact Laboratories, Inc. v. Solex Laboratories, 9 Cir., 1953, 209 F.2d 529; Speed Corp. v. Webster, 9 Cir., 262 F.2d 482.

11. Day-Brite Lighting v. Ruby Lighting Corp., 9 Cir., 1950, 191 F.2d 521.

12. Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 1950, 182 F.2d 1000; Park-in Theatres v. Perkins, 9 Cir., 1951, 190 F.2d 137.

40. In *Decorative Stone Co. v. Building Trades Council*, 2 Cir., 23 F.2d 426, 428, it was held that 'the allowance of an attorney's fee * * * is incidental to the statutory right to damages, and was properly denied in the equity proceedings,' brought under 15 U.S.C. A. § 26. Even though plaintiffs have made out a case for equitable relief under 15 U.S.C.A. § 26 they may not recover 'a reasonable attorneys' fee' because they have failed to establish their claim for damages under 15 U.S.C.A. § 15."

Recognizing its lack of power to award attorney's fees on the counterclaim, the district court, in the first quoted paragraph of the findings, indicated that the allowance of the sum of $20,000 for attorney's fees was made under Section 285, Title 35, which we have quoted, supra. If the findings on this subject had ended there, we should and would have affirmed the award of $20,000. However, under the language contained in the third paragraph of the quoted findings, the district court has stated that if this Court fails to find a violation of the anti-trust laws then the reasonable value of the services rendered by attorneys is $18,500. The effect of such finding is an attempt to force this Court to decide an issue which we have heretofore indicated would serve no practical purpose in this case, and is an issue which we deem unnecessary to pass upon.

 A proper construction of Title 35, Section 285, does not require a district judge in awarding attorney's fees to a prevailing defendant to separately evaluate the services rendered under each separate defense contained in the defendant's answer and then to reduce or increase such award depending upon whether a particular defense failed or is sustained. Under the statute a district judge, in exceptional cases, may award reasonable attorney's fees to the prevailing party. In our view, such award to a defendant may include services rendered by his attorney in connection with a separate defense set forth in the answer even though the trial court should ultimately conclude that such defense had not been sustained; provided that such defendant prevails in the action and that such defense was relevant and material, and was asserted and maintained in good faith. In the *second* paragraph of the quoted finding, the district court stated: "while it [work done by defendant's attorneys with regard to violations of the anti-trust laws] was done in part in support of defendant's counterclaim, it was also done as part of the work showing the defense of unclean hands and the material regarding anti-trust violations was used as a shield in defense of the patent suit as well as a sword in connection with the counterclaim. * * *" It may well be that in a proper case a district judge would be warranted in including in its basis for awarding attorney's fees to a prevailing defendant the services rendered by the defendant's attorney in connection with a separate defense of anti-trust violations even though the district judge should fail to sustain such defense.

 In the case before us, Union filed an answer, amended answer and counterclaim. The amended answer and counterclaim did not contain as a separate defense the allegations of anti-trust violations by Talon. The trial was conducted on the basis of such pleadings. Presumptively the services of Union's attorneys, in relation to anti-trust violations, in the preparation and conduct of the trial were designed to use the anti-trust violations as a sword to inflict damages upon Talon under Union's counterclaim. Following the trial of the action, the district court in a memorandum to counsel stated, "The Antitrust laws may be used as a sword or a shield. The attempt of the defendant to invoke them here, as a sword, fails because of lack of proof of damage and causation. We believe however, if properly pleaded, they are here available as a defense, * * *" Thereafter the district court permitted Union to file an amended answer, setting forth as an additional and

separate defense Talon's alleged violations of the anti-trust laws. The record is, therefore, clear that the violations of the anti-trust law did not become a shield to protect Union from Talon's complaints until the district court decided that such anti-trust violations were not effective as a sword. Under such facts, the "bonus" of $1,500 awarded as part of the attorney's fees cannot be sustained.

Talon further contends that an award of attorney's fees of $20,000 or $18,500 is clearly excessive. It cites Dubil v. Rayford Camp & Co., supra, where this Court held $15,000 as attorney's fees was excessive for a patent trial which, like this one, ran nine days. But in the Dubil case there was involved only one patent for a comparatively simple method of preserving fresh meat, as opposed to the six very complex machinery patents in this case against which Union's attorneys were required to prepare a defense.[13] The most important distinction between the Dubil case and this one, however, is that this Court in Dubil set aside an award of attorney's fees and directed that they be redetermined because the trial court awarded them not only for the work in connection with the patent in suit but, erroneously, also in conjunction with a cause of action over which the court had no jurisdiction.[14] We hold that the trial court's reasons for awarding attorney's fees were clearly stated and supported by the record. The sum of $18,500, in light of all of the circumstances of this case, is not excessive.

From the foregoing opinion it follows that the judgment appealed from should be and is hereby modified by reducing the award of attorney's fees from $20,000 to $18,500, and in all other respects should be and is affirmed. Each party shall bear its own costs on appeal.

---

13. Four patents were dropped from the case at the pretrial conference, and a fifth on appeal.

14. At page 902 of 184 F.2d, it was stated: "It is unnecessary to decide in the instant case whether an award of a reasonable attorney's fee made in a case in which an action on a patent has been properly joined with another cause of action (one for unfair competition, for example) must be based solely on the work done by the attorney in connection with the cause of action arising on the patent or whether the fee may be enlarged by virtue of the work done by the attorney in connection with the other cause of action. In this respect note the phrase of the statute ' * * * upon the entry of judgment on any patent case.' But it is clear, we think, that an award of an attorney fee may not be made in connection with a cause of action over which the court has no jurisdiction. It follows that that portion of the judgment awarding the fee must be set aside and the court below must redetermine what are reasonable attorney fees."