371 F.2d 240
 EVEREST & JENNINGS, INC., Gerald M. Jennings, Harry C. Jennings, Jr., and David D. Jennings, Plaintiffs-Appellants and Cross-Appellees,
v.
The COLSON CORPORATION, Defendant-Appellee and Cross-Appellant.
 No. 15511.
 No. 15512.
 United States Court of Appeals Seventh Circuit.
 January 5, 1967.
 
 Allan D. Mockabee, Los Angeles, Cal., Roy E. Hofer and Hume, Groen, Clement & Hume, Chicago, Ill., for Everest & Jennings.
 Lowell E. Sachnoff, Chicago, Ill., Frederic Bosworth, Cleveland, Ohio, for Colson Corp.
 Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge and SWYGERT, Circuit Judge.
 HASTINGS, Chief Judge.
 
 
 1
 Everest & Jennings, Inc., a California corporation, Gerald M. Jennings, Harry C. Jennings, Jr., and David D. Jennings, appellants [Jennings], manufacturer and individual trustee owners of the patent in suit respectively, have appealed from a judgment of the district court finding their United States Letters Patent No. 2,592,449 "Removable Footrest for Wheel Chairs", issued April 8, 1952 to Jack C. Miller, to be invalid and not infringed by wheel chair footrests manufactured by the Colson Corporation, a Delaware corporation, having a regular and established place of business in Chicago, Illinois.
 
 
 2
 Jennings' '449 combination patent, relating to improvements in wheel chairs and wheel chair footrests, describes footrest structures for wheel chairs. The described footrest can be locked in a normal position for use on an upright forward leg of the wheel chair, or released to swing laterally from its position in front of the chair and thence removed entirely from the frame of the chair.
 
 
 3
 The mobility and detachability of the footrests, which normally protrude to the front, are desirable characteristics, for with them wheel chairs can be made to approach upright objects and structures, such as tables or beds, more closely than wheel chairs with permanently or rigidly mounted footrests. Similarly, the removable footrests are claimed to facilitate storage or transportation of wheel chairs.[1]
 
 
 4
 As found by the district court, the combination patent comprises
 
 
 5
 "(1) a wheel chair with upright forward legs, (2) footrest structures hingedly and removably connected to the legs for swinging motion about vertical axes from straight ahead positions to rearward and outward positions, (3) hinges connecting the legs and footrest structures, and (4) means for releasably locking the footrests against swinging and against removal."
 
 
 6
 Two gudgeons or sockets secured to the outer sides of the front legs of the wheel chair receive pintles of equal or unequal length, which are attached to the tubular frame of the footrest and which are made to fit into the sockets. The footrest is attached to the front leg of the chair by placing the pintles in the sockets; removed by withdrawing them. A knuckle is secured to the inner sides of the front legs of the wheel chair and a similar knuckle is attached at the top of the footrest frame, to register with the wheel chair knuckle when the footrest is swung to extend straight forward from the upright leg of the chair. Each of the knuckles has a hole in it so that when the knuckles of the chair and footrest are aligned, a locking pin can be slipped into the hole to hold the footrest in place. When the locking pin is withdrawn, the footrest can be swung aside and removed.
 
 The district court found:
 
 7
 "6. The whole combination of elements purporting to be patented in the patent in suit, and every feature of alleged novelty of each element, excepting only the pintle hinge (with pintles of equal or unequal length) of the patent compared with the bolt and nut hinge of prior use, had been in public use and on sale, and sold in commercial quantities, by plaintiffs and their predecessors, for more than one year before the plaintiff filed the application for the patent in suit. The prior public use and sale combination chair and footrest is referred to herein as the Prior Art E. & J. Chair. * * *. The said Prior Art E. & J. Chair was manufactured and sold by plaintiffs and/or their predecessors from about 1946 through about the year 1949. It was substantially and essentially identical with the patented chair in structure, function, mode of operation and results. * * *. Its specific difference in structure from the patented chair * * * comprised merely the difference between its bolt and nut hinges, compared with the pintle hinges of the patent, which however, did not alter the sameness of the function, operations or results of the two chairs, excepting in the degree of convenience with which the parts of the hinge could be detached and reassembled. * * *. Pintle hinges in analogous arts with pintles of equal and unequal length were old and well known long prior to the alleged invention of the patent in suit * * *."
 
 
 8
 The district court further found that the changes made in the prior art E. & J. chair, which resulted in the patented combination
 
 
 9
 "8. * * * required no more than the solution of simple engineering problems well within the learning and scope of those skilled in the art. * * *."
 
 
 10
 The district court held that Jennings' '449 patent was invalid because it did not disclose invention. It was further held invalid because of Jennings' prior public use and sale for a period of one year prior to the date of patent application. None of the claims of the '449 patent was found to be infringed.
 
 
 11
 On appeal Jennings contends that the prior art E. & J. chair, of which the patent office had no notice, did not anticipate the claims of the patent in suit, that the claims of the patent were patentable over the prior art, and that Colson's construction infringes the patent.
 
 
 12
 We agree with the district court that the pintle hinge patents, Swiss Patent No. 63,067; Gillespie, U. S. Patent No. 484,361; Fernald, U. S. Patent No. 1,087,576; Long, U. S. Patent No. 373,837; and Herr, U. S. Patent No. 898,647, none of which was cited by the patent examiner, were all pertinent prior art for the '449 patent in suit.
 
 
 13
 While there is a presumption of validity arising from the grant of a patent, no such presumption exists as against prior art not before the patent office. Skirow v. Roberts Colonial House, Inc., 7 Cir., 361 F.2d 388, 390 (1966), and cases cited there.
 
 
 14
 The inventive step from nut and bolt to pintle hinge was, as the trial court found, "no more than the mere choice and selection of size and shape among old devices, with the result of but small increased or changed efficiency and convenience."[2] The use of a device well known in the prior art to obtain results revealed in the same prior art does not constitute patentable invention. Cf. Skirow, supra.
 
 
 15
 In view of the prior pintle hinge art, we hold that the '449 patent did not constitute a patentable invention, for the alleged invention would have been obvious at the date of the invention to those skilled in the relevant art. 35 U.S.C.A. § 103. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Skirow, supra, 361 F.2d at 390, and cases cited there; Strzalkowski et al. v. Beltone Electronics Corporation, 7 Cir., 371 F.2d 237 (opinion filed December 6, 1966). Cf. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); Walt Disney Productions v. Fred A. Niles Communications Center, Inc., et al., 7 Cir., 369 F.2d 230 (opinion filed November 9, 1966).
 
 
 16
 Since we agree with the district court that the patent in suit is invalid because of obviousness, we do not reach the other grounds of invalidity asserted by Colson.
 
 
 17
 Further, having found the '449 patent to be invalid, we need not here reach the question of infringement.
 
 
 18
 Colson, citing Townsend Company v. M.S.L. Industries, 7 Cir., 359 F.2d 814 (1966), urges that it is entitled to an award for reasonable attorney fees because Jennings allegedly acted in bad faith in failing to bring its prior art E. & J. chair to the attention of the patent office. Had it done so, Colson argues, Jennings would not have been able to obtain the '449 patent and therefore could not have instigated this litigation against Colson.
 
 
 19
 In Townsend, the trial court found the plaintiffs had brought their action in bad faith. The question on appeal was the propriety of the trial court's issuance of summary judgment, that is, whether there existed a genuine issue of material fact. Finding no such issue of fact, this court upheld the summary judgment of the trial court.
 
 
 20
 In the instant case, there was a trial, and the trial court, while finding and concluding the '449 patent invalid for anticipation and lack of patentable invention and not infringed by Colson's constructions, made no finding of bad faith in the application for the patent, and denied Colson an allowance of attorneys' fees.
 
 
 21
 Where the trial court has made no finding of bad faith, such a finding cannot readily be made on review from a cold record. We find none here. Cf. Talon, Inc. v. Union Slide Fastener, Inc., 9 Cir., 266 F.2d 731, 739 (1959).
 
 
 22
 We hold that the district court did not abuse its discretion in failing to award attorneys' fees because of the alleged bad faith of Jennings.
 
 
 23
 In sum, we hold that the patent in suit clearly fails to meet the nonobviousness requirement of 35 U.S.C.A. § 103, and that there was no showing of bad faith requisite to justify an award of attorneys' fees.
 
 
 24
 The judgment of the district court is affirmed.
 
 
 25
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The patent in suit contained five claims, the validity of each of which was placed in issue. Typical of the first four claims is claim 4, which reads:
 "4. In combination, a wheel chair having upright forward legs, gudgeons on the legs, footrest structures having pintles receivable downwardly in the gudgeons enabling the footrest structures to be applied and removed from the legs and when in applied position to swing laterally with respect to the legs, and means for releasably locking the footrest structures against swinging movement and against removal from the legs comprising a knuckle on each leg, a knuckle on each footrest structure alignable therewith and locking pins receivable in the aligned knuckles, the knuckles on the footrest structures being adapted to assume positions beneath the knuckles on the legs as and for the purpose described."
 Claim 5 of the patent in suit merely adds pintles of unequal length to the other claims of the patent in suit.
 
 
 [2]
 Finding 8. In finding 9, the trial court stated: "The Miller patent in suit compared with the Prior Art E. & J. Chair accomplished no more than putting the old pintle hinges to a new use with natural and expected results, * * *." In finding 10, the trial court further stated: "* * *. The pintle hinge of the patent in suit was identical with the bolt and nut hinge of the Prior Art E. & J. Chair in respect to all the swinging motions of the footrest in relation to the chair, and was substantially and essentially identical in respect to removability from the chair, and re-attachment thereto; being more conveniently removable only in degree compared with the Prior Art E. & J. Chair. * * *. The specific means for locking the footrest against swinging and removal, comprising aligned, vertically apertured knuckles and a locking pin, were substantially identical in structure, function, mode of operation and results in the patent chair and in the Prior Art E. & J. Chair * * *." And in finding 13, the trial court added: "Plaintiffs' patent came late into the art already crowded with substantially identical chair and footrest combinations, including principally plaintiffs' own Prior Art E. & J. Chair, and teaching pintle hinges with equal and unequal pintles in analogous uses. * * * [citing]. The advance, if any, made by the patent in suit was negligible." We agree