Richard E. **LANDAU, Plaintiff-Appellant, Cross-Appellee,**

v.

**J. D. BARTER CONSTRUCTION COMPANY, INC. et al., Defendants-Appellees, Cross-Appellants.**

Nos. 80–2504, 80–2572.

United States Court of Appeals, Seventh Circuit.

Argued April 28, 1981.

Decided Aug. 21, 1981.

Ralph F. Staubly, Springfield, Ill., for plaintiff-appellant, cross-appellee.

Paul E. Adami, Springfield, Ill., for defendants-appellees, cross-appellants.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge and WYATT,* Senior District Judge.

CUDAHY, Circuit Judge.

This is an appeal from two orders granting summary judgment in favor of defendants, J.D. Barter Construction Co., Sangamo Construction Co., and Sam Barter. The first order, involved an action brought by plaintiff Richard E. Landau for infringement of a patent on a "sand drain" process, and determined that the patent was invalid. The order cited no reasons for granting the

---

* The Honorable Inzer B. Wyatt, Senior District Judge of the Southern District of New York, is sitting by designation.

motion. The district court docket sheet shows merely that the summary judgment motion was granted on the basis of 35 U.S.C. § 102 (1979) (lack of novelty)[1] and 35 U.S.C. § 103 (1979) (obviousness).[2] The second order granted the defendants' counterclaim that plaintiff brought an infringement action founded on a patent obtained by fraud on the U.S. Patent Office. The order awarded attorneys' fees and costs of the suit to the defendants. We remand for an adequate opinion or statement of reasons by the district court establishing a basis for its apparent determination that this case presents no genuine issue of material fact or, in the alternative, for trial if the district court is unable satisfactorily to articulate reasons for its decision.

1. 35 U.S.C. § 102 (1979) states:
 A person shall be entitled to a patent unless
 (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
 (c) he has abandoned the invention, or
 (d) the invention was first patented or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an application for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States, or
 (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371(c) of this title before the invention thereof by the applicant for patent, or
 (f) he did not himself invent the subject matter sought to be patented, or
 (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the

*Facts*

On July 2, 1958, plaintiff filed an application for a patent on a method for constructing a "sand drain"[3] with a helical continuous flight auger. After a number of rejections, plaintiff's application was allowed in July 9, 1963, as Patent No. 3,096,622. Claim 4 of the patent concerns the use of a corkscrew type auger for making sand drains. The auger helically penetrates the soil and is withdrawn vertically with a core of soil contained in the auger. Upon withdrawal of the soil, sand or some other porous material is placed in the cavity to prevent the walls of the hole from collapsing and to permit water to flow through the drain.[4]

On September 3, 1978, Landau filed suit against J.D. Barter Construction Co., San-

reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

2. 35 U.S.C. § 103 (1979) states:
 A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

3. A "sand drain" essentially consists of a man-made underground void filled with sand. Water in the pore spaces between grains of soil ("pore water") will migrate to such a drain due to pressure differentials (associated with construction), and water may thus leave the soil formation in question. The purpose of sand drains is to consolidate subterranean layers of compressible earth in order that construction may occur without settlement damage to the structure or road involved.

4. The text of Claim 4 states:
 In settling of liquid-containing compressible earth formation utilizing a plurality of sand drains, the improvement in the method of constructing the sand drains comprising:
 (1) penetrating into the formation to the desired depth by helically cutting with a substantially continuous flight auger into the earth formation to thereby form a core of the earth.
 (2) removing from the earth formation by withdrawing the auger to thereby create a cavity, and

gamo Construction Co., and Sam Barter for infringement of Claim 4 of the patent. In response, defendants asserted the affirmative defense of patent invalidity. Specifically, defendants contend that Landau's helical continuous flight auger and sand drain were part of the prior art on the date of the alleged invention. They argue that the auger described in Claim 4 is a type of auger which had been sold by manufacturing companies for "many years" before a manufacturer named KA–MO Tools began selling it in 1945. Defendants maintain that publications predating by more than one year plaintiff's application for a patent on July 2, 1958, described the use of augers in the construction of sand drains. *See, e. g.*, *U.S. Department of Commerce, Office of Technical Services, Study of Deep Soil Stabilization by Vertical Sand Drains, Bulletin PB 151692 (1958)*. Defendants have also offered as exhibits additional publications and patents which they contend constitute prior art anticipatory of plaintiff's patent.

Plaintiff seeks to distinguish his patent from the alleged prior art by asserting that construction of a sand drain through "helical cutting" is to be differentiated from "boring" or "drilling" such a drain.[5] He compares helical cutting with turning a common cork-screw into a cork; for each turn of the auger it descends the distance between its flights into the ground. This cork-screw method creates a "core" of earth, which can be withdrawn more or less intact and replaced with sand to produce a sand drain.[6] According to Landau, this

cork-screw method employs fewer auger revolutions per unit distance of penetration than the old boring methods and greatly increases sand-draining efficiency.[7] Finally, plaintiff contends that the commercial success of the auger confirms the validity of his patent.[8]

In addition to asserting the invalidity of Landau's patent, defendants filed a counterclaim which includes the charge that Landau committed fraud on the Patent Office by failing to disclose to the patent examiner all of the relevant prior art. Defendants also allege that Landau failed to submit certain letters written during the pendency of his patent application which discussed the use of sand drains in connection with certain construction projects in Texas.

Landau argues that the patent application included all relevant references to the state of the prior art and that the documents noted by defendants were only cumulative of the sources included in the application. He also contends that none of the asserted prior art references have been shown to be anticipatory of, or even pertinent to, the Landau invention.

*Discussion*

█ Although the Federal Rules of Civil Procedure do not limit or forbid the use of summary judgment procedures in patent cases,[9] the courts should exercise great caution before granting such a motion in an infringement action. *Butler v.*

(3) supporting the walls of the cavity by backfilling the cavity with a porous material to prevent deformation of the cavity.

5. Defendants assert, however, that this argument attempts to sustain the validity of the patent by redefining Claim 4. Throughout the patent application, plaintiff purportedly pressed the advantages of cutting a drain with an auger over ramming a drain with a mandrel. By contrast, the plaintiff has emphasized distinctions in the various methods of using an auger in the present controversy. *See* Appellees' Br. at 5.

6. The old auger-boring method chops up the earth and feeds upwardly the chopped-up mass. Landau claims that this mass "cannot

be considered to be a 'core' in the patent-claim sense." Appellant's Br. at 5.

7. Fewer auger revolutions per unit distance of penetration means "less pore-sealing remolding and smearing of the sand drain cavity walls" which allegedly permits a freer flow of water into the cavity of the sand drain. Appellant's Br. at 5.

8. Landau has licensed his patent on fifteen different occasions, although only one of these licenses apparently concerns Claim 4.

9. *See* F.R.Civ.P. Rule 56; *Research Corporation v. Nasco Industries, Inc.,* 501 F.2d 358, 361 (7th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974).

*Helms,* 550 F.2d 954, 957 (4th Cir. 1977); *Advanced Hydraulic, Inc. v. Otis Elevator Company,* 525 F.2d 477, 479 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Morpul, Inc. v. Glen Raven Knitting Mill, Inc.,* 357 F.2d 732, 736 (4th Cir. 1967). *See also Pfizer, Inc. v. International Rectifier Corp.,* 538 F.2d 180, 185 (8th Cir. 1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977); *Long v. Arkansas Foundry Company,* 247 F.2d 366, 369 (8th Cir. 1957); *Johnson Foils, Inc. v. Huyck Corp.,* 61 F.R.D. 405, 407–08 (N.D.N.Y.1973). Patent cases in particular tend to involve complex issues which are not properly resolved without the aid of expert testimony on the content of the prior art and the novelty of the patent at issue. *American Optical Co. v. New Jersey Optical Co.,* 58 F.Supp. 601, 605 (D.C.Mass.1944). While we will not rule out the possibility of summary judgment in such matters, the trial court ought to buttress such a determination with a careful and detailed statement of reasons to support a summary disposition of the case.

 Here, the district court furnished no opinion or memorandum to explain its grant of summary judgment. We recognize that Rule 52 of the Federal Rules of Civil Procedure does not require that findings of fact and conclusions of law be entered when the matter in question is decided by summary judgment. In theory at least, "findings of fact" as technically defined would not be appropriate when the court has presumably ascertained that there is no genuine issue of material fact. Nonetheless, "although trial judges are not required to enter findings of fact and conclusions of law when granting motions for summary judgment, such findings and conclusions are permissible and are often quite helpful to appellate review". *Steed v. Central of Georgia Railway Co.,* 477 F.2d 1303 (5th Cir. 1973). The furnishing of reasons for a

grant of summary judgment is especially desirable in patent cases, where the facts are technical and complex and where the summary judgment may be grounded in several legal theories. *Mosley v. Odgen Marine, Inc.,* 480 F.2d 1226 (5th Cir. 1973).

The absence of such a statement in this case leaves us no clue as to why the district court concluded that summary judgment was appropriate. We do not know whether the district court thought that Claim 4 did not, in fact, describe the sort of "corkscrew" procedure which the plaintiff contends is distinctive to his patent. We do not know what prior art the district court may have perceived as anticipating the patent here or how the three critical factual elements involved in the determination of obviousness [10] were resolved by the district court. In addition, we do not know what facts the court relied on in finding that the plaintiff committed fraud on the patent office.

On their face, the documents in support of, and in opposition to, the motions for summary judgment may be construed to present issues of material fact with respect to the state of the prior art, the nature of Claim 4 and the fraud issue. It is not clear from these documents whether the prior art actually includes the use of a Landau corkscrew type auger in the construction of a sand drain. Defendants maintain that the Ryser patent, issued in January 1960, contains a description of the Landau invention. *See* Patent 2,920,455; Exhibit H. The Ryser patent, however, describes a drill or earth auger (consisting of a pipe equipped with a bit and exterior helical cutting blades) used in the formation of concrete pilings. Since the document failed to define the term "auger," it is not readily apparent that the Ryser patent unmistakably subsumes the Landau invention.[11]

---

10. These elements include: 1) the scope and content of the prior art; 2) the differences between the prior art and the claims at issue; and 3) the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1965).

11. A similar problem arises with respect to the references to "screw-type augers" in the Commerce Department Bulletin relied upon by the defendants.

Defendants also offered the deposition of Walter Lay to support their prior use argument. Lay indicates that several different types of augers have been employed in a variety of circumstances. Plaintiff, however, presents affidavits and statements from Joseph Petroski, David Greer, and Stanley Johnson which attest to the validity, novelty and value of the Landau patent. In addition, the record includes an impressive list of speeches and publications authored by the plaintiff which tend to verify the acceptance of the Landau patent among construction engineers.

Finally, on the fraud issue, defendants claim that plaintiff withheld prior art from the patent office by transmitting only a portion of a Commerce Department bulletin on sand drains. *Cf.* Landau patent application, Exhibit U with Bulletin PB 151642, Exhibit B. Plaintiff argues that the patent examiner was aware of the prior art and that the omitted portions of the text were cumulative. Plaintiff's position is supported by language in the patent application which states, "[t]his applicant makes no claim to the idea of cutting into the earth with a helical cutting tool, admitting this is old. However, it is submitted that the idea of forming a sand drain cavity utilizing as one step in the overall process a helical cutting action is novel and patentable." Exhibit U. A finding of fraud in this case requires clear and convincing evidence of wilful omissions or misstatements to the Patent Office. In the absence of conclusions regarding the state of the prior art and the scope of Claim 4, we are unable to determine whether the evidence of fraud meets this standard.

Due to the apparent or arguable factual disputes on the major issues in this case, we decline to review the district court orders in the absence of a statement of reasons for granting summary judgment. The trial court's award of attorneys' fees on the fraud issue is likewise unreviewable on the basis of the record before us. The statute permits an award of attorneys' fees only in "exceptional" cases. 35 U.S.C. § 285 (1979). Reviewing courts, however, consistently require specific findings by the district court which demonstrate why a case is "exceptional." *Mayview Corp. v. Rodstein*, 620 F.2d 1347 (9th Cir. 1980); *Continental Art Co. v. Bertolozzi*, 232 F.2d 131 (7th Cir. 1956). In *Super Products Corp. v. D. P. Way Corp.*, 546 F.2d 748 (7th Cir. 1976), this court emphasized:

> When a claim for attorneys' fees under section 285 has been based on a charge of fraud on the Patent Office, we have required clear and definite proof to establish entitlement to an award. *Sarkes Tarzian, Inc. v. Philco Corp.*, 351 F.2d 557, 560, 147 USPQ 172, 174–175 (7th Cir. 1965); *Armour & Co. v. Wilson & Co.*, 274 F.2d 143, 148, 124 USPQ 115, 118–119 (7th Cir. 1960). While fraud is not the only inequitable conduct in dealing with the Patent Office that may support an award of attorneys' fees, *see Kearney & Trecker Corp. v. Giddings & Lewis, Inc.*, 452 F.2d 579, 597, 171 USPQ 650, 664 (7th Cir. 1971), the misconduct must be accompanied by some element of willfulness or bad faith. *See Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155, 190 USPQ 6, 14–15 (7th Cir. 1976); *Everest & Jennings, Inc. v. Colson Corp.*, 371 F.2d 240, 243, 152 USPQ 209, 210–211 (7th Cir.), *cert. denied*, 387 U.S. 918, 87 S.Ct. 2032, 18 L.Ed.2d 971, 153 USPQ 888 (1967). *Cf. Parker v. Motorola, Inc.*, 524 F.2d 518, 535, 188 USPQ 225, 238–239 (5th Cir. 1975). The standard is not one of liability for innocent or even negligent omissions, or misstatements before the Patent Office. *Cf. Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 186, 190 USPQ 273, 286 (8th Cir. 1976). The element of willfulness or bad faith must be established by clear and convincing evidence.

*Id.* at 758. The affidavits of the parties in this case appear facially insufficient to establish willfulness or bad faith under the clear and convincing evidentiary standard. Hence, we cannot point to anything in the record before us to support an award of attorneys' fees to the defendants here.

■ Judicial economy dictates that we remand this case to the district court with instructions to supply a detailed statement of reasons why summary judgment should be granted.[12] The district court's reasoned analysis should cover in detail why the various exhibits do not create any genuine issue of material fact. Further, there should be an indication of the principles of law the district court found to be dispositive.

The cause is therefore vacated and remanded for a detailed statement of reasons supporting the grant of summary judgment. In the alternative, if articulation of the basis for summary judgment reveals irreparable flaws in this mode of disposition, the matter may be set for trial.[13]

---

12. A case should be remanded when it is impossible to define the assumptions upon which the district court acted. *Hanson v. Aetna Life & Casualty,* 625 F.2d 573, 575–576 (5th Cir. 1980). *See also Solely v. Star & Herald Co.,* 390 F.2d 364, 369–370 (5th Cir. 1968); *U. S. for Use and Benefit of Industrial Instrument Corp. v. Paul Hardeman, Inc.,* 320 F.2d 115 (5th Cir. 1963); 6 Moore's Federal Practice ¶ 56.02[11] (2d ed. 1979).

13. In the event some, but not all issues may be resolved on affidavits and other documentary evidence, the district court should, of course, comply with Fed.R.Civ.P. Rule 56(d).